WO

JL

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Timothy J. Salazar,

Plaintiff,

v.

David Shinn, et al.,

Defendants.

No.   CV 21-01465-PHX-JAT (CDB)

**ORDER**

Plaintiff Timothy J. Salazar, who is confined in the Arizona State Prison Complex (ASPC)-Eyman, has filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983 (Doc. 1) and an Application to Proceed In Forma Pauperis (Doc. 2).  The Court will dismiss the Complaint with leave to amend.

**I.     Application to Proceed In Forma Pauperis and Filing Fee**

The Court will grant Plaintiff's Application to Proceed In Forma Pauperis.  28 U.S.C. § 1915(a).  Plaintiff must pay the statutory filing fee of $350.00.  28 U.S.C. § 1915(b)(1).  The Court will assess an initial partial filing fee of $40.37.  The remainder of the fee will be collected monthly in payments of 20% of the previous month's income credited to Plaintiff's trust account each time the amount in the account exceeds $10.00. 28 U.S.C. § 1915(b)(2).  The Court will enter a separate Order requiring the appropriate government agency to collect and forward the fees according to the statutory formula.

. . . .

. . . .

JDDL-K

1   **II.     Statutory Screening of Prisoner Complaints**

2          The Court is required to screen complaints brought by prisoners seeking relief

3   against a governmental entity or an officer or an employee of a governmental entity.  28

4   U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff

5   has raised claims that are legally frivolous or malicious, that fail to state a claim upon which

6   relief may be granted, or that seek monetary relief from a defendant who is immune from

7   such relief.  28 U.S.C. § 1915A(b)(1)–(2).

8          A pleading must contain a "short and plain statement of the claim *showing* that the

9   pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does

10   not demand detailed factual allegations, "it demands more than an unadorned, the-

11   defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

12   (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere

13   conclusory statements, do not suffice."  *Id.*

14          "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a

15   claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atlantic Corp. v. Twombly*,

16   550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content

17   that allows the court to draw the reasonable inference that the defendant is liable for the

18   misconduct alleged."  *Id.*  "Determining whether a complaint states a plausible claim for

19   relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial

20   experience and common sense."  *Id.* at 679.  Thus, although a plaintiff's specific factual

21   allegations may be consistent with a constitutional claim, a court must assess whether there

22   are other "more likely explanations" for a defendant's conduct.  *Id.* at 681.

23          But as the United States Court of Appeals for the Ninth Circuit has instructed, courts

24   must "continue to construe *pro se* filings liberally."  *Hebbe v. Pliler*, 627 F.3d 338, 342

25   (9th Cir. 2010).  A "complaint [filed by a pro se prisoner] 'must be held to less stringent

26   standards than formal pleadings drafted by lawyers.'"  *Id.* (quoting *Erickson v. Pardus*, 551

27   U.S. 89, 94 (2007) (per curiam)).

28          If the Court determines that a pleading could be cured by the allegation of other

facts, a pro se litigant is entitled to an opportunity to amend a complaint before dismissal of the action. *See Lopez v. Smith*, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (en banc). Plaintiff's Complaint will be dismissed for failure to state a claim, but because it may possibly be amended to state a claim, the Court will dismiss it with leave to amend.

**III.   Complaint**

In his Complaint, Plaintiff sues Arizona Department of Corrections (ADC) Director David Shinn and Officers Pruitt, Uehling, and Boggs.   Plaintiff asserts Eighth and Fourteenth Amendment violations with respect to his removal from the Security Threat Group (STG) Step Down Program.  He seeks injunctive and monetary relief as well as his attorney's fees and court costs.

Plaintiff alleges the following:

On April 20, 2016, Plaintiff was brought to ASPC-Eyman Browning Unit's "VCU" for an investigation into a murder that had occurred at ASPC-Lewis.  Plaintiff spent two years in VCU while the investigation continued.   In February 2018, Plaintiff was reclassified and moved to Wing 4 at Browning Unit because of his Security Threat Group (STG) status.[1]  Plaintiff has had two major disciplinary violations in the past three years, and his last disciplinary violation was in 2018.   Plaintiff has not participated in any "documented" STG or gang activity.

ADC's STG Step Down Program is set forth in Department Order (DO) 806.8.  In January 2020, Plaintiff entered the STG Step-Down Program and was moved to Wing 2 at Browning Unit, Baker Cluster to continue participating in the program.  On July 16, 2020, Plaintiff was removed from the STG Step-Down Program without any removal hearing or disciplinary infractions.   Plaintiff was informed that he had been removed from the program because Plaintiff was "pending charges."

---

[1] Plaintiff's inmate record indicates that from March 9, 2016 through May 2, 2020, he was classified as Maximum Custody Risk and Highest Internal Risk.   *See* https://corrections.az.gov/public-resources/inmate-datasearch (search by Inmate Number 258054 in Active Inmates) (last accessed August 26, 2021).   On May 2, 2020, he was reclassified to Maximum Custody and High Internal Risk.  *Id.*  On November 16, 2020, Plaintiff was reclassified to Maximum Custody and Moderate Internal Risk, which is his active classification.  *Id.*

On July 21, 2020, Plaintiff submitted an Inmate Informal Complaint Resolution stating that he had entered the Step Down Program on January 14, 2020; he had continuously participated in the program as required by DO 806; on July 16, 2020, while he was Phase 1 of the Step Down Program, he was verbally advised that that his Step-Down Program placement was being terminated; and he was removed from the program without receiving the "substantive and procedural requirements" set forth in Department Order 806.11.   According to Plaintiff, the substantive and procedural requirements included written notification that listed the exact reasons for termination and removal from the program; a hearing, at which Plaintiff had the right to be present; and the right to appeal an adverse decision.   Plaintiff requested immediate reinstatement into the Step-Down Program, noting that the "time frames" set forth in DO 806.11 had already been violated, and an untimely hearing would "no longer cure the due process violations."

Following his removal from the Step-Down Program, Plaintiff apparently sent an Inmate Letter, although he does not state to whom he sent the Inmate Letter or what he wrote in the letter.  On July 22, 2020, Plaintiff received a response from Defendant Uehling, which stated, "I have reviewed your inmate letter, you were informed wrong, it's not your past charges or convictions that got you removed.  Although what would get you removed would be charges one 'might' be facing in the near future, once the Department is notified of charges or cases that will be going to court that information is passed to the Administration."   Defendant Uehling wrote that the Administration could remove a prisoner from the Step-Down Program "per 806.11.1.1," which apparently was the reason Plaintiff was removed from the program.

On August 12, 2020, Plaintiff received a response to the Informal Complaint.  The response noted that according to DO 806.8, to be eligible to participate in the Step-Down Program, a validated STG member must successfully complete a 24-month period in which he did not participate in any documented STG/gang activity and had no documented incidents of various disciplinary violations.  The response also stated that prisoners could be removed from the program upon confirmation that the prisoner had violated any of the

criteria outlined above, and no further prisoner action or hearing was required.   The response further noted that it appeared Plaintiff had been removed from the program because he had failed to complete the program within the required timeframe.

On August 14, 2020, Plaintiff submitted an Inmate Grievance.  In September 2020, Plaintiff received a response to the Inmate Grievance, which stated that Plaintiff had been removed from the Step-Down Program because an ongoing investigation had revealed that he had violated the criteria set forth in DO 806.

On September 7, 2020, Plaintiff submitted an Inmate Grievance Appeal to Defendant Shinn, stating "absolutely nothing" in DO 806 justified his removal from the Step-Down Program.  Plaintiff wrote that he had spoken to the Special Security Unit (SSU) about this issue, and they had advised him that SSU had nothing to do with his removal from the program; rather, his removal was based on an incident that had occurred approximately five years earlier, when he was on a general population yard, and before he had been validated as an STG member.  Plaintiff stated that he had been told that he was removed from the Step-Down Program because "they will be bringing charges stemming from that incident."  Plaintiff wrote that he had already completed all the sanctions incurred in the prison disciplinary system, including two years in an enhanced security unit, two years in STG maximum custody, and compliance with "all levels" of the STG policy. Plaintiff did not receive a response to the Inmate Grievance Appeal.

On April 4, 2021, DO 806 was revised.  On May 19, 2021, Correctional Officer (CO) III Harper conducted a maximum custody review classification hearing.  CO III Harper determined that Plaintiff's classification score was 45/33; his internal risk score was close/3; he was a validated member of the Mexican Mafia, an STG; he had two major disciplinary violations in the previous three years, the last of which was in 2018; and he had completed all available programming.  CO III Harper noted that, "per SSU," Plaintiff was to remain in maximum custody due to STG activity in the past 24 months.  On May 26, 2021, Plaintiff sent Lieutenant Quintero an Inmate Letter asking for clarification regarding his continued placement in maximum custody.  Plaintiff stated that he met all

the requirements to be moved to a lower custody yard, and he had not participated in any STG activity in the previous 24 months.  On May 28, 2021, Plaintiff received a response from SSU Officer Madrigal, which stated, "you are denied due to pending charges," and any questions regarding the charges would "have to go through STG."

On May 31, 2021, Plaintiff filed an Inmate Informal Complaint Resolution, stating that on May 21, 2021, he had been reclassified to the "appropriate" custody level—close custody—but CO III Harper nevertheless recommended that Plaintiff continue in maximum custody "per SSU."  Plaintiff wrote that pursuant to DO 801.10.11, ADC's Central Office was the "final approval" for removal from maximum custody, and if the Central Office denied the recommendation for removal, "the unit will be contacted to initiate the due process."  Plaintiff stated that under DO 806.5.3, to become eligible for custody reductions and housing changes, a validated STG member or terrorist classified as maximum custody must complete one of four conditions.  Plaintiff wrote that he was in Step 3 and Phase 3, his classification score was 45/33, and he had not been involved in any violent or disruptive behavior or any gang/STG activity.

On June 10, 2021, Plaintiff sent an Inmate Letter to Lieutenant Quintero asking to whom Plaintiff needed to speak to resolve the issue.  On June 15, 2021, Plaintiff received a response from Lieutenant Quintero, which said, "you are pending charges [and] according to the STG unit, you will not be eligible for reduction until charges are done, this was the reason for your removal from Step-Down."  Sometime thereafter, Plaintiff's May 31 Informal Complaint was returned unprocessed.

On June 14, 2021, Plaintiff submitted an Inmate Grievance, stating that he was grieving the inmate classification policy as a violation of his due process rights.  Plaintiff wrote that he had not been charged with a crime in the last five years, he had not been involved in disruptive behavior and/or gang activity, and he had continued to reduce his classification scores and complete programming.  Plaintiff wrote that he had not been present for his reclassification and could not challenge "any of these allegations."  It appears the Inmate Grievance was returned unprocessed.

1        On June 30, 2021, Plaintiff sent a letter to Defendant Shinn, stating that he met all
2  the criteria for reclassification to close custody and asking Shinn to transfer him to a close
3  custody general population unit.  On July 5, 2021, Plaintiff submitted an Inmate Grievance
4  Appeal, stating that he was appealing the failure to process his Informal Complaint and
5  Inmate Grievance.  On July 20, 2021, Plaintiff received a response to the Inmate Grievance
6  Appeal, stating that it was unprocessed.  The same day, Plaintiff filed a motion in Maricopa
7  County Superior Court requesting disposition of any pending charges.

8        On July 23, 2021, Plaintiff sent an Inmate Letter to Defendants Pruitt, Uehling, and
9  Boggs, stating that he had been removed from the Step-Down Program because he was
10  "pending charges," and the same reason was being used to deny him the opportunity to
11  reduce his custody level.  Plaintiff asked the STG Unit to "drop the pending charges/STG
12  activity pretext and let [him] reduce [his] classification level to" close custody.  As of
13  August 18, 2021, Plaintiff had not received a response to the Inmate Letter.

14        On July 23, 2021, Plaintiff received an Inmate Letter Response from Defendant
15  Shinn's Office.  Regional Operation Administrator Stacey Crabtree responded on behalf of
16  Defendant Shinn and stated that it had been determined that Plaintiff no longer met the
17  criteria for the Step-Down Program and that based on his pending charges, he was
18  appropriately classified in maximum custody.

19        On August 2, 2021, Plaintiff received a letter from the Maricopa County Superior
20  Court Clerk's Office stating that the Clerk could not process his motion without a valid
21  case number.  On August 6, 2021, Plaintiff received a letter from the Maricopa County
22  Attorney's Office, stating the Office had not located any pending cases or warrants
23  "involving this person" in Maricopa County Superior Court.

24        Plaintiff alleges that Defendants Pruitt, Uehling, and Boggs are responsible for
25  enforcing "these policies and procedures," and it is "ob[]vious" that they are denying
26  Plaintiff the opportunity to reclassify out of solitary confinement, where Plaintiff has
27  remained for more than five years.

28  . . . .

1   **IV.      Failure to State a Claim**

2          To prevail in a § 1983 claim, a plaintiff must show that (1) acts by the defendants

3   (2) under color of state law (3) deprived him of federal rights, privileges or immunities and

4   (4) caused him damage.  *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir.

5   2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278,

6   1284 (9th Cir. 1994)).  In addition, a plaintiff must allege that he suffered a specific injury

7   as a result of the conduct of a particular defendant and he must allege an affirmative link

8   between the injury and the conduct of that defendant.  *Rizzo v. Goode*, 423 U.S. 362, 371-

9   72, 377 (1976).

10          **A.      Defendant Shinn**

11          There is no respondeat superior liability under § 1983, and therefore, a defendant's

12   position as the supervisor of persons who allegedly violated Plaintiff's constitutional rights

13   does not impose liability.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Hamilton

14   v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992); *Taylor v. List*, 880 F.2d 1040, 1045 (9th

15   Cir. 1989).  "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a

16   plaintiff must plead that each Government-official defendant, through the official's own

17   individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.

18          Plaintiff has not alleged that Defendant Shinn personally participated in a

19   deprivation of Plaintiff's constitutional rights, was aware of a deprivation and failed to act,

20   or formed policies that resulted in Plaintiff's injuries.  Plaintiff alleges that in September

21   2020, he submitted an Inmate Grievance Appeal to Defendant Shinn regarding his removal

22   from the Step-Down Program, but he did not receive a response to the Appeal.  Plaintiff

23   also alleges that on June 30, 2021, he sent a letter to Defendant Shinn, stating that he met

24   all the criteria for reclassification to close custody and asking Shinn to transfer him to a

25   close custody general population unit.  Stacey Crabtree responded to Plaintiff's letter on

26   behalf of Defendant Shinn; the response merely reiterated that it had been determined that

27   Plaintiff no longer met the criteria for the Step-Down Program and that based on his

28   pending charges, he was appropriately classified in maximum custody.  These allegations

do not support a conclusion that Defendant Shinn in any way was personally involved in the decision to remove Plaintiff from the Step-Down Program or to continue his placement in maximum custody.  The Court will dismiss without prejudice Defendant Shinn.

### B.   Defendants Pruitt, Uehling, and Boggs

Plaintiff's only allegation against Defendants Pruitt and Boggs is that on July 23, 2021, Plaintiff sent an Inmate Letter to Defendants Pruitt, Uehling, and Boggs, stating that he had been removed from the Step-Down Program because he was "pending charges," and the same reason was being used to deny him the opportunity to reduce his custody level.  Plaintiff did not receive a response to the Inmate Letter.  These allegations are insufficient to support a conclusion that any conduct by Defendants Pruitt and Boggs resulted in any injury to Plaintiff.

With respect to Defendant Uehling, Plaintiff's only other allegation is that in July 2020, Uehling wrote in a response to Plaintiff's Inmate Letter that Plaintiff had been misinformed regarding the reason for his removal from the Step-Down Program.  This allegation is insufficient to support a conclusion that Defendant Uehling in any way personally participated in the decision to remove Plaintiff from the Step-Down Program. Thus, the Court will dismiss Defendants Pruitt, Uehling, and Boggs.

### C.   Due Process

Plaintiff's claims regarding his removal from the Step-Down Program and his continued placement in maximum custody arise, if all, under the Due Process Clause of the Fourteenth Amendment.  In analyzing a due process claim, the Court must first decide whether Plaintiff was entitled to any process, and if so, whether he was denied any constitutionally required procedural safeguard.  Liberty interests that entitle an inmate to due process are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (internal citations omitted).

1    The opportunity to participate in the Step-Down Program did not create a liberty

2    interest that entitled Plaintiff to due process.   Rather, the Step-Down Program is

3    voluntarily administered by ADC and allows STG prisoners to be removed from maximum

4    custody by meeting certain requirements. *See Johnson v. Ryan*, 2020 WL 736352 (D. Ariz.

5    Feb. 13, 2020).   As such, as long as Plaintiff was afforded the process he was due for his

6    placement in maximum custody, the Court cannot find that he is entitled to greater

7    protections simply because ADC voluntarily offers a program that would create another

8    way for Plaintiff to be removed from maximum custody. *See id.*; *Sandin*, 515 U.S. 481-

9    84 (a court determines whether a liberty interest is created by a state prison regulation or

10   policy by focusing on the nature of the deprivation it effects); *James v. Rowlands*, 606 F.3d

11   646, 657 (9th Cir. 2010) ("[W]hen a state establishes procedures to protect a liberty interest

12   that arises from the Constitution itself[,] ... the state does not thereby create a new

13   constitutional right to those procedures themselves, and non-compliance with those

14   procedures does not necessarily violate the Due Process Clause.... Rather, the Due Process

15   Clause itself determines what process is due before the state may deprive someone of a

16   protected liberty interest.").   Thus, Plaintiff cannot state a due process claim based on his

17   removal from the Step-Down Program.

18   With respect to his placement in maximum custody, the Court notes that Plaintiff

19   does not allege that his original placement in maximum custody in 2016 did not comport

20   with due process requirements. *See Wilkinson v. Austin*, 545 U.S. 209 (2005) (notice and

21   opportunity to be heard, involving informal, non-adversarial procedures were adequate

22   safeguards for placement in maximum custody).   In any event, Plaintiff's validation as an

23   STG member and his placement in maximum custody was an administrative decision, not

24   a disciplinary decision. *Cf. Munoz v. Rowland*, 104 F.3d 1096, 1098 (9th Cir. 1997) (noting

25   that "California's policy of assigning suspected gang affiliates to [segregated housing] is

26   not a disciplinary measure, but an administrative strategy designed to preserve order in the

27   prison and protect the safety of all inmates.")   Moreover, Plaintiff has no constitutional

28   right to a particular security classification. *See Neal v. Shimoda*, 131 F.3d 818, 828 (9th

JDDL-K

Cir. 1997) (citing *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976) (no liberty interest protected by the Due Process Clause is implicated in a prison's reclassification and transfer decisions).

Plaintiff's due process claim regarding his continued placement in maximum custody also fails.  First, as noted above, Plaintiff has no constitutional right to a particular security classification.  *See id.*  Second, Plaintiff has not alleged facts to support a conclusion that he did not receive due process with respect to his continued maximum custody placement.  Plaintiff wrote in his June 2021 Inmate Grievance that he had not been present for his reclassification and could not challenge "any of these allegations." However, Plaintiff has not alleged any *facts* concerning the procedures associated with the May 2021 reclassification.  Furthermore, the Court has previously concluded that ADC's periodic review of maximum custody placement satisfies due process.  *Hernandez v. Schriro*, 2011 WL 2910710, at *8-9 (D. Ariz. 2011); *see also Mendez v. Ryan*, 2013 WL 6408389, at *8 (D. Ariz. 2013); *Standley v. Ryan*, 2012 WL 3288728, at *9-10 (D. Ariz. 2012); *Faulkner v. Ryan*, 2012 WL 407452, at *9-10 (D. Ariz. 2012).  Nothing in Plaintiff's allegations compels a different conclusion.

In sum, Plaintiff has failed to state a claim in the Complaint, and it will be dismissed.

## V.    Leave to Amend

Within 30 days, Plaintiff may submit a first amended complaint to cure the deficiencies outlined above.  The Clerk of Court will mail Plaintiff a court-approved form to use for filing a first amended complaint.  If Plaintiff fails to use the court-approved form, the Court may strike the amended complaint and dismiss this action without further notice to Plaintiff.

Plaintiff must clearly designate on the face of the document that it is the "First Amended Complaint."  The first amended complaint must be retyped or rewritten in its entirety on the court-approved form and may not incorporate any part of the original Complaint by reference.  Plaintiff may include only one claim per count.

JDDL-K

1   A first amended complaint supersedes the original Complaint. *Ferdik v. Bonzelet*,
2   963 F.2d 1258, 1262 (9th Cir. 1992); *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d
3   1542, 1546 (9th Cir. 1990). After amendment, the Court will treat the original Complaint
4   as nonexistent. *Ferdik*, 963 F.2d at 1262. Any cause of action that was raised in the
5   original Complaint and that was voluntarily dismissed or was dismissed without prejudice
6   is waived if it is not alleged in a first amended complaint. *Lacey v. Maricopa County*, 693
7   F.3d 896, 928 (9th Cir. 2012) (en banc).

8   **VI. Warnings**

9      **A.    Release**

10   If Plaintiff is released while this case remains pending, and the filing fee has not
11   been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court
12   that he intends to pay the unpaid balance of his filing fee within 120 days of his release or
13   (2) file a non-prisoner application to proceed in forma pauperis. Failure to comply may
14   result in dismissal of this action.

15      **B.    Address Changes**

16   Plaintiff must file and serve a notice of a change of address in accordance with Rule
17   83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other
18   relief with a notice of change of address. Failure to comply may result in dismissal of this
19   action.

20      **C.    Possible "Strike"**

21   Because the Complaint has been dismissed for failure to state a claim, if Plaintiff
22   fails to file an amended complaint correcting the deficiencies identified in this Order, the
23   dismissal may count as a "strike" under the "3-strikes" provision of 28 U.S.C. § 1915(g).
24   Under the 3-strikes provision, a prisoner may not bring a civil action or appeal a civil
25   judgment in forma pauperis under 28 U.S.C. § 1915 "if the prisoner has, on 3 or more prior
26   occasions, while incarcerated or detained in any facility, brought an action or appeal in a
27   court of the United States that was dismissed on the grounds that it is frivolous, malicious,

28

JDDL-K

- 12 -

or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

### D.   Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik*, 963 F.2d at 1260-61 (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)   Plaintiff's Application to Proceed In Forma Pauperis (Doc. 2) is **granted**.

(2)   As required by the accompanying Order to the appropriate government agency, Plaintiff must pay the $350.00 filing fee and is assessed an initial partial filing fee of $40.37.

(3)   The Complaint (Doc. 1) is **dismissed** for failure to state a claim. Plaintiff has **30 days** from the date this Order is filed to file a first amended complaint in compliance with this Order.

(4)   If Plaintiff fails to file an amended complaint within 30 days, the Clerk of Court must, without further notice, enter a judgment of dismissal of this action with prejudice that states that the dismissal may count as a "strike" under 28 U.S.C. § 1915(g) and deny any pending unrelated motions as moot.

(5)   The Clerk of Court must mail Plaintiff a court-approved form for filing a civil rights complaint by a prisoner.

Dated this 28th day of September, 2021.

James A. Teilborg
Senior United States District Judge

### Instructions for a Prisoner Filing a Civil Rights Complaint
### in the United States District Court for the District of Arizona

1. <u>Who May Use This Form</u>.   The civil rights complaint form is designed to help incarcerated persons prepare a complaint seeking relief for a violation of their federal civil rights.   These complaints typically concern, but are not limited to, conditions of confinement.   **This form should not be used to challenge your conviction or sentence**.   If you want to challenge a state conviction or sentence, you should file a petition under 28 U.S.C. § 2254 for a writ of habeas corpus by a person in state custody.   If you want to challenge a federal conviction or sentence, you should file a motion under 28 U.S.C. § 2255 to vacate sentence in the federal court that entered the judgment.

2. <u>The Form</u>.   **Local Rule of Civil Procedure (LRCiv) 3.4 provides that complaints by incarcerated persons must be filed on the court-approved form.**   The form must be typed or neatly handwritten. The form must be completely filled in to the extent applicable.   All questions must be answered clearly and concisely in the appropriate space on the form.   If needed, you may attach additional pages, **but no more than fifteen additional pages**, of standard letter-sized paper. You must identify which part of the complaint is being continued and number all pages. If you do not fill out the form properly, you will be asked to submit additional or corrected information, which may delay the processing of your action.   You do not need to cite law.

3. <u>Your Signature</u>.   You must tell the truth and sign the form.   If you make a false statement of a material fact, you may be prosecuted for perjury.

4. <u>The Filing and Administrative Fees</u>.   The total fees for this action are $402.00 ($350.00 filing fee plus $52.00 administrative fee).   If you are unable to immediately pay the fees, you may request leave to proceed in forma pauperis.   Please review the "Information for Prisoners Seeking Leave to Proceed with a (Non-Habeas) Civil Action in Federal Court In Forma Pauperis Pursuant to 28 U.S.C. § 1915" for additional instructions.

5. <u>Original and Judge's Copy</u>.   You must send an **original plus one copy** of your complaint and of any other documents submitted to the Court.   You must send one additional copy to the Court if you wish to have a file-stamped copy of the document returned to you.   All copies must be identical to the original.   Copies may be legibly handwritten.   **This section does not apply to inmates housed at an Arizona Department of Corrections facility that participates in electronic filing.**

6. <u>Where to File</u>.   You should file your complaint in the division **where you were confined when your rights were allegedly violated**.   *See* LRCiv 5.1(a) and 77.1(a).   If you were confined in Maricopa, Pinal, Yuma, La Paz, or Gila County, file in the Phoenix Division.   If you were confined in Apache, Navajo, Coconino, Mohave, or Yavapai County, file in the Prescott Division. If you were confined in Pima, Cochise, Santa Cruz, Graham, or Greenlee County, file in the Tucson Division.   **Mail the original and one copy of the complaint with the $402 filing and administrative fees or the application to proceed in forma pauperis to:**

Revised 12/1/20

| Phoenix & Prescott Divisions: | **OR** | Tucson Division: |
| --- | --- | --- |
| U.S. District Court Clerk | | U.S. District Court Clerk |
| U.S. Courthouse, Suite 130 | | U.S. Courthouse, Suite 1500 |
| 401 West Washington Street, SPC 10 | | 405 West Congress Street |
| Phoenix, Arizona   85003-2119 | | Tucson, Arizona   85701-5010 |

7.   <u>Change of Address</u>.   You must immediately notify the Court and the defendants in writing of any change in your mailing address.   **Failure to notify the Court of any change in your mailing address may result in the dismissal of your case.**

8.   <u>Certificate of Service</u>.   You must furnish the defendants with a copy of any document you submit to the Court (except the initial complaint and application to proceed in forma pauperis). Each original document (except the initial complaint and application to proceed in forma pauperis) must include a certificate of service on the last page of the document stating the date a copy of the document was mailed to the defendants and the address to which it was mailed.   *See* Fed. R. Civ. P. 5(a), (d).   Any document received by the Court that does not include a certificate of service may be stricken.   **This section does not apply to inmates housed at an Arizona Department of Corrections facility that participates in electronic filing.**
   A certificate of service should be in the following form:

   I hereby certify that a copy of the foregoing document was mailed
   this _____ (month, day, year) to:
   Name:   _____
   Address:_____
                    Attorney for Defendant(s)

   _____
   (Signature)

9.   <u>Amended Complaint</u>.   If you need to change any of the information in the initial complaint, you must file an amended complaint.   The amended complaint must be written on the court-approved civil rights complaint form.   You may file one amended complaint without leave (permission) of Court within 21 days after serving it or within 21 days after any defendant has filed an answer, whichever is earlier.   *See* Fed. R. Civ. P. 15(a).   Thereafter, you must file a motion for leave to amend and lodge (submit) a proposed amended complaint.   LRCiv 15.1.   In addition, an amended complaint may not incorporate by reference any part of your prior complaint. LRCiv 15.1(a)(2).   **Any allegations or defendants not included in the amended complaint are considered dismissed**.   All amended complaints are subject to screening under the Prison Litigation Reform Act; screening your amendment will take additional processing time.

10.   <u>Exhibits</u>.   You should not submit exhibits with the complaint or amended complaint. Instead, the relevant information should be paraphrased.   You should keep the exhibits to use to support or oppose a motion to dismiss, a motion for summary judgment, or at trial.

11.   <u>Letters and Motions</u>.   It is generally inappropriate to write a letter to any judge or the staff of any judge.   The only appropriate way to communicate with the Court is by filing a written pleading or motion.

2

12.  <u>Completing the Civil Rights Complaint Form</u>.

**HEADING:**

1.  <u>Your Name</u>.  Print your name, prison or inmate number, and institutional mailing address on the lines provided.

2.  <u>Defendants</u>.  If there are **four or fewer** defendants, print the name of each.  If you name **more than four** defendants, print the name of the first defendant on the first line, write the words "and others" on the second line, and attach an additional page listing the names of **all** of the defendants.  Insert the additional page after page 1 and number it "1-A" at the bottom.

3.  <u>Jury Demand</u>.  If you want a jury trial, you must write "JURY TRIAL DEMANDED" in the space below "CIVIL RIGHTS COMPLAINT BY A PRISONER."  Failure to do so may result in the loss of the right to a jury trial.  A jury trial is not available if you are seeking only injunctive relief.

**Part A.   JURISDICTION:**

1.  <u>Nature of Suit</u>. Mark whether you are filing the complaint pursuant to 42 U.S.C. § 1983 for state, county, or city defendants; "*Bivens v. Six Unknown Federal Narcotics Agents*" for federal defendants; or "other."  If you mark "other," identify the source of that authority.

2.  <u>Location</u>.  Identify the institution and city where the alleged violation of your rights occurred.

3.  <u>Defendants</u>.  Print all of the requested information about each of the defendants in the spaces provided.  If you are naming more than four defendants, you must provide the necessary information about each additional defendant on separate pages labeled "2-A," "2-B," etc., at the bottom.  Insert the additional page(s) immediately behind page 2.

**Part B.   PREVIOUS LAWSUITS:**

You must identify any other lawsuit you have filed in either state or federal court while you were a prisoner.  Print all of the requested information about each lawsuit in the spaces provided.  If you have filed more than three lawsuits, you must provide the necessary information about each additional lawsuit on a separate page.  Label the page(s) as "2-A," "2-B," etc., at the bottom of the page and insert the additional page(s) immediately behind page 2.

**Part C.   CAUSE OF ACTION:**

You must identify what rights each defendant violated.  The form provides space to allege three separate counts (**one violation per count**).  If you are alleging more than three counts, you must provide the necessary information about each additional count on a separate page.  Number the additional pages "5-A," "5-B," etc., and insert them immediately behind page 5.  Remember that you are limited to a total of fifteen additional pages.

3

1.  <u>Counts</u>.   You must identify which civil right was violated.  **You may allege the violation of only one civil right per count**.

2.  <u>Issue Involved</u>.   Check the box that most closely identifies the issue involved in your claim.  **You may check only one box per count**.   If you check the box marked "Other," you must identify the specific issue involved.

3.  <u>Supporting Facts</u>.   After you have identified which civil right was violated, you must state the supporting facts.  Be as specific as possible.  You must state what each individual defendant did to violate your rights.  If there is more than one defendant, you must identify which defendant did what act.  You also should state the date(s) on which the act(s) occurred, if possible.

4.  <u>Injury</u>.   State precisely how you were injured by the alleged violation of your rights.

5.  <u>Administrative Remedies</u>.   You must exhaust any available administrative remedies before you file a civil rights complaint.  *See* 42 U.S.C. § 1997e.   Consequently, you should disclose whether you have exhausted the inmate grievance procedures or administrative appeals for each count in your complaint.   If the grievance procedures were not available for any of your counts, fully explain why on the lines provided.

**Part D.   REQUEST FOR RELIEF:**
   Print the relief you are seeking in the space provided.

**SIGNATURE:**
   You must sign your name and print the date you signed the complaint.   Failure to sign the complaint will delay the processing of your action.   Unless you are an attorney, you may not bring an action on behalf of anyone but yourself.

**FINAL NOTE**

   You should follow these instructions carefully.   Failure to do so may result in your complaint being stricken or dismissed.   All questions must be answered concisely in the proper space on the form.   If you need more space, you may attach no more than fifteen additional pages.  But the form must be completely filled in to the extent applicable.   If you attach additional pages, be sure to identify which section of the complaint is being continued and number the pages.

4

_____
Name and Prisoner/Booking Number

_____
Place of Confinement

_____
Mailing Address

_____
City, State, Zip Code

**(Failure to notify the Court of your change of address may result in dismissal of this action.)**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

_____ ,
(Full Name of Plaintiff)


                    Plaintiff,

v.


(1) _____ ,
(Full Name of Defendant)

(2) _____ ,

(3) _____ ,

(4) _____ ,

                    Defendant(s).

☐ Check if there are additional Defendants and attach page 1-A listing them.

CASE NO. _____
                    (To be supplied by the Clerk)

**CIVIL RIGHTS COMPLAINT
BY A PRISONER**

☐ Original Complaint
☐ First Amended Complaint
☐ Second Amended Complaint

## A.   JURISDICTION

1.   This Court has jurisdiction over this action pursuant to:
    ☐ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
    ☐ 28 U.S.C. § 1331; *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).
    ☐ Other: _____.

2.   Institution/city where violation occurred: _____.

**550/555**

## B.   DEFENDANTS

1.   Name of first Defendant: _____.  The first Defendant is employed
as: _____ at_____.
                          (Position and Title)                                            (Institution)

2.   Name of second Defendant: _____.  The second Defendant is employed as:
as: _____ at_____.
                          (Position and Title)                                            (Institution)

3.   Name of third Defendant: _____.  The third Defendant is employed
as: _____ at_____.
                          (Position and Title)                                            (Institution)

4.   Name of fourth Defendant: _____.  The fourth Defendant is employed
as: _____ at_____.
                          (Position and Title)                                            (Institution)

**If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.**

## C.   PREVIOUS LAWSUITS

1.   Have you filed any other lawsuits while you were a prisoner?        ☐ Yes        ☐ No

2.   If yes, how many lawsuits have you filed? _____.   Describe the previous lawsuits:

   a.  First prior lawsuit:
       1.   Parties: _____ v. _____
       2.   Court and case number: _____.
       3.   Result:  (Was the case dismissed?  Was it appealed?  Is it still pending?)_____
            _____.

   b.  Second prior lawsuit:
       1.   Parties: _____ v. _____
       2.   Court and case number: _____.
       3.   Result:  (Was the case dismissed?  Was it appealed?  Is it still pending?)_____
            _____.

   c.  Third prior lawsuit:
       1.   Parties: _____ v. _____
       2.   Court and case number: _____.
       3.   Result:  (Was the case dismissed?  Was it appealed?  Is it still pending?)_____
            _____.

**If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.**

2

## D.   CAUSE OF ACTION

### COUNT I

1.    State the constitutional or other federal civil right that was violated: _____

_____.

2.    **Count I**.   Identify the issue involved.   Check **only one**.   State additional issues in separate counts.
   ☐ Basic necessities          ☐ Mail              ☐ Access to the court        ☐ Medical care
   ☐ Disciplinary proceedings   ☐ Property          ☐ Exercise of religion       ☐ Retaliation
   ☐ Excessive force by an officer  ☐ Threat to safety  ☐ Other: _____.

3.    **Supporting Facts.**   State as briefly as possible the FACTS supporting Count I.   Describe exactly what **each Defendant** did or did not do that violated your rights.   State the facts clearly in your own words without citing legal authority or arguments.

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____.

4.    **Injury.**   State how you were injured by the actions or inactions of the Defendant(s).

_____
_____
_____.

5.    **Administrative Remedies:**
   a.    Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?                                                              ☐ Yes       ☐ No
   b.    Did you submit a request for administrative relief on Count I?                ☐ Yes       ☐ No
   c.    Did you appeal your request for relief on Count I to the highest level?       ☐ Yes       ☐ No
   d.    If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not.   _____
   _____.

3

## COUNT II

1.   State the constitutional or other federal civil right that was violated:  _____
_____.

2.   **Count II.**   Identify the issue involved.   Check **only one**.   State additional issues in separate counts.
☐ Basic necessities             ☐ Mail                    ☐ Access to the court        ☐ Medical care
☐ Disciplinary proceedings      ☐ Property                ☐ Exercise of religion       ☐ Retaliation
☐ Excessive force by an officer ☐ Threat to safety ☐ Other: _____.

3.   **Supporting Facts.**   State as briefly as possible the FACTS supporting Count II.   Describe exactly what **each Defendant** did or did not do that violated your rights.   State the facts clearly in your own words without citing legal authority or arguments.

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____.

4.   **Injury.**   State how you were injured by the actions or inactions of the Defendant(s).

_____
_____
_____.

5.   **Administrative Remedies.**
    a.   Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?                                                                    ☐ Yes        ☐ No
    b.   Did you submit a request for administrative relief on Count II?        ☐ Yes        ☐ No
    c.   Did you appeal your request for relief on Count II to the highest level?   ☐ Yes        ☐ No
    d.   If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not.   _____
_____.

4

## COUNT III

1.   State the constitutional or other federal civil right that was violated: _____
_____.

2.   **Count III.**   Identify the issue involved.   Check **only one**.   State additional issues in separate counts.
☐ Basic necessities          ☐ Mail              ☐ Access to the court        ☐ Medical care
☐ Disciplinary proceedings   ☐ Property          ☐ Exercise of religion        ☐ Retaliation
☐ Excessive force by an officer   ☐ Threat to safety   ☐ Other: _____.

3.   **Supporting Facts.**   State as briefly as possible the FACTS supporting Count III.   Describe exactly what **each Defendant** did or did not do that violated your rights.   State the facts clearly in your own words without citing legal authority or arguments.

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____.

4.   **Injury.**   State how you were injured by the actions or inactions of the Defendant(s).

_____
_____
_____.

5.   **Administrative Remedies.**
   a.   Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?                                                                    ☐ Yes      ☐ No
   b.   Did you submit a request for administrative relief on Count III?              ☐ Yes      ☐ No
   c.   Did you appeal your request for relief on Count III to the highest level?    ☐ Yes      ☐ No
   d.   If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not.   _____
_____.

**If you assert more than three Counts, answer the questions listed above for each additional Count on a separate page.**

## E.   REQUEST FOR RELIEF

State the relief you are seeking:

_____
_____
_____
_____
_____
_____
_____
_____.


I declare under penalty of perjury that the foregoing is true and correct.

Executed on  _____          _____
                               DATE                                                SIGNATURE OF PLAINTIFF



_____
(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)


_____
(Signature of attorney, if any)


_____
(Attorney's address & telephone number)


## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form.  If you need more space, you may attach no more than fifteen additional pages.  But the form must be completely filled in to the extent applicable. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages.