WO                                                                                          JL

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Timothy J. Salazar,                           No.    CV 21-01465-PHX-JAT (CDB)

                        Plaintiff,

v.                                            **ORDER**

David Shinn, et al.,

                        Defendants.

**I.      Procedural History**

On August 24, 2021, Plaintiff Timothy J. Salazar, who is confined in the Arizona State Prison Complex-Eyman, filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983 and an Application to Proceed In Forma Pauperis.  In a September 29, 2021 Order, the Court granted the Application to Proceed and dismissed the Complaint because Plaintiff had failed to state a claim.  The Court gave Plaintiff 30 days to file an amended complaint that cured the deficiencies identified in the Order.

On October 19, 2021, Plaintiff filed a Motion to Amend and lodged a proposed First Amended Complaint.  In a December 1, 2021 Order, the Court granted the Motion to Amend, directed the Clerk of Court to file the lodged proposed First Amended Complaint, and dismissed the First Amended Complaint because Plaintiff had failed to state a claim. The Court gave Plaintiff 30 days to file a second amended complaint that cured the deficiencies identified in the Order.

. . . .

After receiving two extensions of time, on February 8, 2022, Plaintiff filed a Second Amended Complaint (Doc. 17).  The Court will order Defendants Uehling, Brier, Days, Flores, Harper, and Crabtree to answer Count One of the Second Amended Complaint; order Defendants Uehling and Flores to answer Count Two; and dismiss Count Three and Defendants Shinn, Scott, Cortez, Van Winkle, and Lewis without prejudice.

## II.     Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct.  *Id.* at 681.

. . . .

1      But as the United States Court of Appeals for the Ninth Circuit has instructed, courts

2   must "continue to construe *pro se* filings liberally."  *Hebbe v. Pliler*, 627 F.3d 338, 342

3   (9th Cir. 2010).  A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent

4   standards than formal pleadings drafted by lawyers.'"  *Id.* (quoting *Erickson v. Pardus*, 551

5   U.S. 89, 94 (2007) (per curiam)).

6   **III.    Second Amended Complaint**

7      In his three-count Second Amended Complaint, Plaintiff sues Arizona Department

8   of Corrections (ADC) Director David Shinn; Wardens Panann Days and Ingrid Van

9   Winkle; Deputy Wardens Robert Brier, William Cortez, and Travis Scott; Security Threat

10  Group (STG) Supervisor Lance Uehling; Offender Services Bureau (OSB) Administrator

11  Stacy Crabtree; Classification Administrator Evangelina Flores; and Correctional Officers

12  (COs) III Harper and Lewis.  Plaintiff asserts claims regarding his reclassification to

13  maximum custody and his conditions of confinement.  He seeks declaratory, injunctive,

14  and monetary relief, as well as his fees and costs for this case.

15     In Count One, Plaintiff alleges that on May 19, 2021, Defendant Harper conducted

16  a periodic review of Plaintiff's maximum custody placement and administrative

17  segregation.  Plaintiff contends this review was "inadequate and did not comport with due

18  process."  Plaintiff claims Defendant Harper relied on Plaintiff's validation as an STG

19  member and his current maximum custody placement to reclassify Plaintiff to continued

20  maximum custody, without affording Plaintiff "proper substantive and procedural due

21  process."   Plaintiff further asserts that he was reclassified pursuant to "unlawful

22  administrative segregation practices," which deviated from the policy established in

23  ADC's Department Order (DO) 806, Security Threat Groups.

24     Plaintiff claims that on May 19, 2021, Defendant Uehling deviated from established

25  policy by denying Plaintiff close custody status with no "valid" explanation and

26  "absolutely no due process or procedural requirement," as set forth in DO 801 and DO 806.

27  Plaintiff alleges that Defendant Crabtree signed off and personally approved Plaintiff's

28  maximum custody review and negligently based her decision on Defendant Harper's

**TERMPSREF**

reasoning that Plaintiff is a validated STG member.  Plaintiff asserts he is "inactive," and he never received the specific substantive predicates of DO 806.  Plaintiff contends that by denying him reclassification to close custody, Defendant Crabtree's review was meaningless and did not comport with due process.

Plaintiff claims that on May 21, 2021, Defendant Brier directly authorized and approved the "erroneous deprivation classification review" and "sign[ed] off personally" on the review of Plaintiff's maximum custody placement.  Plaintiff alleges that on May 24, 2021, Defendant Days signed off on and approved Plaintiff's maximum custody placement and confinement to administrative segregation at Browning Unit, using "STG activity" as a pretext, without the "specified substantive predicates" set forth in DO 806 and DO 801.  Plaintiff contends this "clearly shows it was a meaningless review and rubber-stamping at its finest."  Plaintiff alleges that it is "undisputed" that the reviews of his maximum custody confinement are "bias[ed], meaningless, rote, [and] repetitious" and did not safeguard him against the risk of an erroneous deprivation of his liberty interest.  Plaintiff claims that on June 2, 2021, Defendant Flores "signed off by approving" Plaintiff's continued maximum custody placement in administrative segregation.

In Count Two, Plaintiff alleges that on December 9, 2021, Defendant Lewis conducted a periodic review of Plaintiff's maximum custody placement.  Defendant Lewis stated that Plaintiff was "scoring close custody placement," but he had continued to be classified to maximum custody because, "per SSU and STG unit," Plaintiff was "dealing with pending charges."  Defendant Lewis stated that he had obtained documentation from the Attorney General's Office verifying there were no pending charges for Plaintiff, Plaintiff was "phase 3 step 3" and continued to perform with positive behavior, and his file had been reviewed by Lewis and forwarded to the CO IV for approval.  On December 22, 2021, Defendant Cortez "denied" continued maximum custody placement for Plaintiff, and the next day, Defendant Van Winkle "denied" continued maximum custody placement, stating that Plaintiff "can be managed at close custody" and that he had not participated in any STG activity in more than 24 months.

1    Nevertheless, on January 6, 2022, Defendant Flores approved Plaintiff's continued

2    placement in maximum custody without explanation.  The same day, Defendant Uehling

3    denied Plaintiff close custody status with no "valid" explanation and "absolutely no due

4    process or procedural requirements" outlined in DO 806 and DO 801.[1]

5    On January 22, 2022, Defendant Lewis sent a letter to Plaintiff stating that

6    Defendant Flores had approved continued maximum custody placement "due to

7    [unidentified] pending charges."  Lewis wrote that Defendants Cortez and Van Winkle had

8    checked the box "denied" on Plaintiff's maximum custody placement packet and explained

9    that "this is basically stating that they are denying [Plaintiff's] placement here in max

10   custody and are approving close custody and [Lewis's] recommendation to close custody."

11   Lewis wrote that Defendant Flores had checked the box "approved," thereby approving

12   Plaintiff's continued placement in maximum custody.  Lewis stated, "I hope this helps

13   anyone understand the confusion of these boxes that are checked showing approved or

14   denied."  Plaintiff remains in maximum custody.

15   In Count Three, Plaintiff alleges that he is subject to the following conditions in

16   maximum custody: filthy living conditions and infestation of roaches and mice; his cell

17   light stays on 24 hours per day, although it is sometimes dimmed; he cannot apply for

18   reinstatement of lost earned release credits or parole class 3; he cannot leave the prison

19   when his family is serious ill or for funerals; he is subject to strip searches any time he

20   leaves his cell; he is not allowed adequate recreation time; and he only showers once every

21   five to seven days.  Plaintiff claims that he receives an unhealthy daily diet caloric intake

22   because he receives only one "sack" for breakfast and lunch and one hot tray for dinner.

23   Plaintiff asserts the meals are "regularly expired, rotten and reused food."  Plaintiff asserts

24   that Defendant Scott "approves of such."

---

26   [1] According to online records, on June 2, 2021, Plaintiff was reclassified to
     maximum custody with a moderate internal risk.  On January 6, 2022, Plaintiff again was
27   reclassified to maximum custody with a moderate internal risk.  Plaintiff has not received
     a disciplinary charge since November 28, 2018, although he had been found guilty of
28   several major disciplinary infractions before that.  *See* https://corrections.az.gov/public-
     resources/inmate-datasearch (search by Inmate Number 258054) (last accessed Feb. 17,
     2022).

As his injury, Plaintiff alleges he suffered psychological distress, constant anger, and loss of all "accomplishments," including contact visits, a chance to regain loss earned release credits and parole class 3, a chance to participate in educational programs, work opportunities, mental health and religious group meetings, and an "overall chance to rehabilitate."

**IV.    Failure to State a Claim**

To prevail in a § 1983 claim, a plaintiff must show that (1) acts by the defendants (2) under color of state law (3) deprived him of federal rights, privileges or immunities and (4) caused him damage.  *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994)).  In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant.  *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

Although pro se pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action.  *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).  Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. *Id.*

**A.    Defendant Shinn**

There is no respondeat superior liability under § 1983, and therefore, a defendant's position as the supervisor of persons who allegedly violated Plaintiff's constitutional rights does not impose liability.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.

. . . .

Plaintiff has not alleged that Defendant Shinn personally participated in a deprivation of Plaintiff's constitutional rights, was aware of a deprivation and failed to act, or formed policies that resulted in any constitutional injury. Plaintiff does not claim that Shinn was personally involved in either of his periodic classification reviews. Plaintiff's only allegation against Shinn is that, as ADC Director, he "caused, created, authorized, condoned, ratified, approved or knowingly acquiesced in the illegal, unconstitutional and inhumane conditions, acts, omissions, policies, customs, and practices" about which Plaintiff complains. Plaintiff does not allege facts to support that he suffered any constitutional injury *because of* a policy Shinn approved; rather, he asserts that the procedures set forth in DOs 801 and 806 were *not* followed. Plaintiff also has not alleged that Shinn knew of and condoned, customs, or practices that were contrary to Shinn's policies despite knowing those customs or practices resulted in violation of Plaintiff's constitutional rights. Plaintiff therefore fails to state a claim against Shinn, and the Court will dismiss Defendant Shinn.

### B.   Defendants Lewis, Cortez, and Van Winkle

Plaintiff's allegations indicate that Defendants Lewis, Cortez, and Van Winkle recommended approving Plaintiff's placement in close custody, and he has not alleged that they had any other involvement in his classification. Thus, Plaintiff has not alleged facts to support a conclusion that he suffered any injury as a result of these Defendants' conduct. The Court will therefore dismiss Defendants Lewis, Cortez, and Van Winkle.

### C.   Conditions of Confinement

To state an Eighth Amendment conditions-of-confinement claim, plaintiffs must meet a two-part test. "First, the alleged constitutional deprivation must be, objectively, sufficiently serious" such that the "official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations omitted). Second, the prison official must have a "sufficiently culpable state of mind," i.e., he must act with "deliberate indifference to inmate health or safety." *Id.* (internal quotations omitted). Deliberate indifference is a higher standard than

negligence or lack of ordinary due care for the prisoner's safety. *Id.* at 835. In defining "deliberate indifference" in this context, the Supreme Court has imposed a subjective test: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* he must also draw the inference." *Id.* at 837 (emphasis added).

Plaintiff's allegations in Count Three do not support a conclusion that Defendant Scott was aware of and disregarded a substantial risk of serious harm to Plaintiff due to his conditions of confinement. Plaintiff alleges only that Defendant Scott "approves" of the conditions. This allegation is too vague and conclusory to state a claim. Thus, the Court will dismiss Count Three and Defendant Scott.

**V.   Claims for Which an Answer Will be Required**

Liberally construed, Plaintiff has stated a Fourteenth Amendment due process claim in Count One against Defendants Harper, Uehling, Crabtree, Brier, Days, and Flores based on Plaintiff's June 2021 reclassification to maximum custody and a Fourteenth Amendment due process claim in Count Two against Defendants Flores and Uehling based on Plaintiff's January 2022 reclassification to maximum custody. The Court will require Defendants Harper, Uehling, Crabtree, Brier, Days, and Flores to answer Count One and Defendants Uehling and Flores to answer Count Two.

**VI.   Warnings**

**A.   Release**

If Plaintiff is released while this case remains pending, and the filing fee has not been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court that he intends to pay the unpaid balance of his filing fee within 120 days of his release or (2) file a <u>non</u>-prisoner application to proceed in forma pauperis. Failure to comply may result in dismissal of this action.

**B.   Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other

1   relief with a notice of change of address. Failure to comply may result in dismissal of this

2   action.

3   **C.    Copies**

4   Because Plaintiff is currently confined in an Arizona Department of Corrections unit

5   subject to General Order 14-17, Plaintiff is not required to serve Defendants with a copy

6   of every document he files or to submit an additional copy of every filing for use by the

7   Court, as would ordinarily be required by Federal Rule of Civil Procedure 5 and Local Rule

8   of Civil Procedure 5.4. Plaintiff may comply with Federal Rule of Civil Procedure 5(d) by

9   including, with every document he files, a certificate of service stating that this case is

10  subject to General Order 14-17 and indicating the date the document was delivered to

11  prison officials for filing with the Court.

12  **If** Plaintiff is transferred to a unit other than one subject to General Order 14-17, he

13  will be required to: (a) serve Defendants, or counsel if an appearance has been entered, a

14  copy of every document that he files, and include a certificate stating that a copy of the

15  filing was served; and (b) submit an additional copy of every filing for use by the Court.

16  *See* Fed. R. Civ. P. 5(a) and (d); LRCiv 5.4. Failure to comply may result in the filing

17  being stricken without further notice to Plaintiff.

18  **D.    Possible Dismissal**

19  If Plaintiff fails to timely comply with every provision of this Order, including these

20  warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*,

21  963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure

22  to comply with any order of the Court).

23  **IT IS ORDERED:**

24  (1)    Count Three is **dismissed** without prejudice.

25  (2)    Defendants Shinn, Lewis, Cortez, Van Winkle, and Scott are **dismissed**

26  without prejudice.

27  (3)    Defendants Harper, Uehling, Crabtree, Brier, Days, and Flores must answer

28  Count One. Defendants Uehling and Flores must answer Count Two.

(4)      The Clerk of Court must send Plaintiff this Order, and a copy of the Marshal's Process Receipt & Return form (USM-285) and Notice of Lawsuit & Request for Waiver of Service of Summons form for Defendants Harper, Uehling, Crabtree, Brier, Days, and Flores.

(5)      Plaintiff must complete[2] and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order.  The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(6)      If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Second Amended Complaint on a Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served.  Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(7)      The United States Marshal must retain the Summons, a copy of the Second Amended Complaint, and a copy of this Order for future use.

(8)      The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure and Rule 4(j)(2) of the Federal Rules of Civil Procedure and Rule 4.1(c) of the Arizona Rules of Civil Procedure.  The notice to Defendants must include a copy of this Order.

(9)      A Defendant who agrees to waive service of the Summons and Second Amended Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff, **within 30 days of the date of the notice and request for waiver of service** pursuant to Federal Rule of Civil Procedure 4(d)(1)(F) to avoid being charged the cost of personal service.

---

[2] If a Defendant is an officer or employee of the Arizona Department of Corrections, Plaintiff must list the address of the specific institution where the officer or employee works.  Service cannot be effected on an officer or employee at the Central Office of the Arizona Department of Corrections unless the officer or employee works there.

TERMPSREF

(10)    The Marshal must immediately file signed waivers of service of the summons.  If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

(a)    personally serve copies of the Summons, Second Amended Complaint, and this Order upon Defendants pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

(b)    within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant.  The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Second Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required.  Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(11)    Defendants Harper, Uehling, Crabtree, Brier, Days, and Flores must answer the Second Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(12)    Any answer or response must state the specific Defendant by name on whose behalf it is filed.  The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

. . . .

. . . .

. . . .

. . . .

**TERMPSREF**

1      (13)   This matter is referred to Magistrate Judge Camille D. Bibles pursuant to

2   Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as

3   authorized under 28 U.S.C. § 636(b)(1).

4      Dated this 7th day of March, 2022.

5

6

7

8                                    James A. Teilborg
                                Senior United States District Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28